# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-19-0429 |
| JERMEARA PRESTON, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

This case stems from a tort suit filed in Maryland state court asserting common law and state statutory claims related to alleged lead poisoning. Plaintiff Allstate Insurance Company filed the present action for declaratory judgment to determine insurance coverage and its potential duty to indemnify certain defendants in the underlying state suit. Defendant Jermeara Preston, the plaintiff in the state suit, now seeks to dismiss or, in the alternative, to stay the declaratory judgment action. (ECF No. 16.) No hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, the Court concludes that Allstate's action for declaratory judgment is premature, and the Court lacks jurisdiction at this time. The motion to dismiss will be granted without prejudice to Allstate's ability to refile the claim once the state court action is fully resolved.

## I. Background[1]

In 2017, Jermeara Preston sued multiple defendants in the Circuit Court of Baltimore City, alleging damages from exposure to lead-based paint. *See Preston v. S&S Partnership*, Civ. No. 24-C-17-004952 (Cir. Ct. Balt. City filed Oct. 10, 2017). (Compl. ¶ 13, ECF No. 1.) Stanley

---

[1] On a motion to dismiss, the well-pled allegations of the Complaint are taken as true and facts and inferences are viewed in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

Rochkind and Rhoda Rochkind are defendants in the state suit. (*Id.* ¶¶ 3–4.) Preston claimed the Rochkinds owned[2] a residential property in Baltimore City at which Preston was exposed to lead-based paint between November 1996 and 2000. (*Id.* ¶¶ 13, 15.) Her lawsuit named twenty-three defendants and alleged damages from lead exposure sustained at three different Baltimore properties during that time. (State Compl. ¶¶ 2–3, ECF No. 1-1.[3]) That lawsuit is still pending.

Allstate provided insurance coverage to the Rochkinds through a "Personal Umbrella Policy," which included "excess personal liability coverage," from June 1988 until the policy's cancellation on June 13, 2000. (Compl. ¶ 16.) Allstate contends that coverage for claims arising from lead exposure was eliminated from the Rochkinds' policy as of June 13, 1999. (*Id.* ¶ 16.)

In the present lawsuit, Allstate seeks a declaratory judgment that "coverage is not available for the Rochkind Insureds under the [Personal Umbrella] Policy for any damages caused by lead exposure to Preston, occurring on or after June 13, 1999," and, further, that "Allstate's share of the pro-rata allocation of liability is limited to 42.19% of the total of any judgment for Preston." (*Id.* at 6–7.)

## II. *Legal Standard*

Under the Declaratory Judgement Act ("the Act"), district courts "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Act is "an enabling [statute], which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). District courts have "great

---

[2] Preston's state action alleged other owners of that property as well, all of whom are named as interested parties in the present suit. (Compl. ¶ 14.)

[3] The Court may consider documents attached to and incorporated by reference into the Complaint, as well as matters of public record subject to judicial notice, without converting a motion to dismiss into a motion for summary judgment. *See Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014).

latitude in determining whether to assert jurisdiction over declaratory judgment actions." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998) (quoting *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998)). Discretion to decline to exercise jurisdiction exists "even when the suit otherwise satisfies subject matter jurisdiction prerequisites." *Wilton*, 515 U.S. at 282. "[W]henever a parallel proceeding is pending in state court, district courts must take into account 'considerations of federalism, efficiency, and comity'" before exercising jurisdiction over a suit for declaratory judgment. *Kapiloff*, 155 F.3d at 493 (quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994)).

Declaratory judgment actions may be appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* (quoting *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996)). However, the Act "authorizes relief only '[i]n a case of actual controversy'" within the meaning of Article III of the Constitution. *Pa. Nat'l Mutual Cas. Ins. Co. v. Alliance Roofing & Sheet Metal, Inc.*, Civ. No. WDQ-12-1427, 2013 WL 1120587, at *3 (D. Md. Mar. 14, 2013) (quoting 28 U.S.C. § 2201(a)); *see also White v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 913 F.2d 165, 167 (4th Cir. 1990). Federal jurisdiction under the Act exists if "the facts alleged, under all the circumstances, show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Alliance Roofing*, 2013 WL 1120587, at *3. (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). A proper declaratory judgment suit must involve "a controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (quoting *White*, 913 F.3d at 167); *see also Golden v. Zwickler*, 394 U.S. 103, 108 (1969)

(quoting *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947)) (stating that Article III jurisdiction requires "actual cases, not abstractions").

*III. Analysis*

In her motion to dismiss, Preston argues that the Court should dismiss or stay the declaratory judgment suit under the abstention principles articulated by the Fourth Circuit in *Kapiloff*, 155 F.3d at 493–94. (Mot. Dismiss. Mem. at 5–6, ECF No. 16-1.) Although Preston does not explicitly move to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), district courts "have an independent obligation to determine whether subject matter jurisdiction exists." *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). Here, the Court concludes that Allstate's declaratory judgment action is premature and does not yet present an actual controversy of "sufficient immediacy and reality" to confer Article III jurisdiction. *Alliance Roofing*, 2013 WL 1120587, at *3 (quoting *Md. Cas. Co.*, 312 U.S. at 273). Without knowing the answers to essential factual questions—including whether the Rochkinds are liable to Preston at all and whether, if liable, that liability derives from damages incurred after Allstate eliminated coverage for lead-related claims—any declaratory judgment issued by this Court would not be conclusive, but would rather operate only as "an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (quoting *White*, 913 F.3d at 167).

In arguing for the appropriateness of declaratory relief, Allstate relies primarily on the Fourth Circuit's decision in *Pennsylvania National Mutual Casualty Insurance Co. v. Roberts*, 668 F.3d 106 (4th Cir. 2012). In that case, the Fourth Circuit affirmed a declaratory judgment calculating the pro rata allocation of liability between the insurance company and the insured party. *Id.* at 113–15. Under that method, "'[e]ach insurer is liable for that period of time it [covered the risk] compared to the *entire* period during which damages occurred' and 'losses are prorated to the

insured' for periods during which it was uninsured." *Id.* at 113 (quoting *Mayor & City Council of Baltimore v. Utica Mut. Ins. Co*, 802 A.2d 1070, 1104 (Md. Ct. Spec. App. 2002)). Allstate argues that, under *Roberts*, it is entitled to a calculation of its pro rata share of liability now.

This case is not like *Roberts*. There, the underlying tort suit had already concluded with jury verdict against the insured party and awarding damages to the tort plaintiff. *Id.* at 110. Evidence from the underlying trial determined the actual period during which the tort plaintiff incurred damages, and the district court was able to determine the portion of that period for which the insurer provided coverage. *Id.* at 111 (determining 24 months of coverage, compared to 55 months of exposure). The insurance company's share of liability was calculated based on the percentage of the total exposure period during which it provided coverage to the insured. *Id.*

Here, the underlying state suit is still pending, and crucial questions of fact are unresolved. No court has determined whether Preston even suffers from lead poisoning, let alone whether the Rochkinds are liable for proximately causing it, and, if so, what the total exposure period was. "[T]he question of whether the insurer has a duty to pay a final judgment against the insured turns on a comparison of the ultimate findings of fact concerning the alleged occurrence within the policy coverage." *Alliance Roofing*, 2013 WL 1120587, at *6 (quoting *Steyer v. Westvaco Corp.*, 450 F. Supp. 384, 389 (D. Md. 1978)). Where such critical facts are undetermined, a declaratory judgment is premature, as it resolves a question that may never become ripe, based on facts that are purely hypothetical.[4] *See, e.g., Zwickler*, 394 U.S. at 108 (distinguishing abstract

---

[4] Consider the very specific declaratory judgment Allstate seeks: that its liability is limited to 42.19% of any total judgment. (Compl. at 7–8, ECF No. 1.) Without knowing the total exposure period, there is no denominator for the pro-rata calculation performed in *Roberts*. Allstate does not explain the basis for its 42.19% figure, but to reach it, Allstate must have assumed a certain total exposure period. That is, Allstate must have assumed that Preston's allegations that she suffered lead exposure attributable to the Rochkinds would ultimately be proven, at least to some extent—otherwise, there would be no liability to allocate. Allstate also must have assumed that some of the exposure occurred after it eliminated coverage for lead-related claims—otherwise, the coverage period would be 100% of the exposure period. These assumptions underline the contingent nature of the relief Allstate seeks. Any declaration of a specific share of liability would need to be predicated on assumed facts about the length and dates of Preston's

5

questions from Article III controversies); *Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992) ("[A] federal declaration that an insurer had no duty to indemnify could be rendered totally unnecessary by a subsequent state verdict for the insured in the underlying state action.").

Allstate's reliance on the Fourth Circuit's decision in *Nautilus Insurance Co. v. Winchester Homes* is equally misplaced. In that case, the Fourth Circuit reversed the district court's dismissal of a declaratory judgment action, finding that the court erred in refusing to exercise jurisdiction, even though the state tort suit was ongoing. 15 F.3d at 375. In *Nautilus*, however, the declaratory judgment action sought to resolve not only the scope of the insurer's duty to indemnify any potential judgment against the insured but also which of three insurers had an obligation to defend in the underlying state suit. *Id.* at 379. The duty to defend was an unresolved legal question, separate and independent from the factual and legal issues raised in the state lawsuit and presenting an immediate controversy. *See id.* Here, Allstate does not seek a declaratory judgment with respect to its duty to defend in the state tort suit.[5] Allstate's only claim is that its duty to indemnify the Rochkinds—*if they are liable to Preston*—should be subject to a pro-rata allocation. This is simply not a ripe dispute. "[T]he duty to indemnify, by contrast [to the duty to defend] refers to the insurer's responsibility to pay a monetary award when its insured *has become liable for a covered claim*." *Alliance Roofing*, 2013 WL 1120587, at *6 (emphasis added). The Rochkinds have not yet been found liable, and they may never be.[6]

---

exposure to lead. Such a declaration would be inapplicable to any state court judgment based on a different set of factual findings.

[5] In its opposition brief, Allstate states that "this Court is not being asked to determine whether Allstate has a duty to defend the Rochkind Insureds" in the state court lawsuit. (Opp'n Mot. Dismiss at 16, ECF No. 18.) Either Allstate concedes its duty to defend, at least with respect to potential damages before the policy change in 1999, or it views the duty to defend as irrelevant to the specific declaration it seeks from this Court.

[6] *Nautilus*, which was decided under de novo review, 15 F.3d at 375, is also of limited usefulness after the Supreme Court's decision in *Wilton*, which set abuse of discretion as the standard of review and clarified the breadth of district court discretion, *Wilton*, 515 U.S. at 289. *See also Poston*, 88 F.3d at 257–58 (recognizing the partial abrogation of pre-*Wilton* cases, including *Nautilus*, that "implied [stricter] constraints on district court discretion").

The Court is also unpersuaded by Allstate's argument that the lack of clarity about its potential liability impedes its strategy during settlement negotiations and therefore necessitates a declaratory judgment. Uncertainty about potential liability is inherent in settlement negotiations. True, a declaratory judgment now might help resolve some of that uncertainty and speed resolution of the state lawsuit, but that does not mean this Court has jurisdiction to enter one. Allstate, at root, seeks a declaration of what their potential liability would be *if* Preston suffers from lead poisoning, *if* that lead poisoning was caused in part by exposure at the Rochkinds' property, *if* the Rochkinds are found liable to her on account of that exposure, and *if* some of that exposure occurred after Allstate changed its policy to eliminate coverage for lead-related damages. The federal courts are not in the business of opining on such hypothetical scenarios that may never come to pass.[7] *Mitchell*, 330 U.S. at 89 ("[T]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions. . . . This is as true of declaratory judgments as any other field.").

## IV. Conclusion

For the foregoing reasons, an Order shall enter granting Preston's motion and dismissing the case without prejudice to Allstate's ability to refile its claim, if necessary, once the underlying state tort action has been fully resolved.

---

[7] Allstate does not appear to argue that this Court should itself resolve these factual questions. To the extent that the specific relief sought would nonetheless require such determinations, the Court finds—not merely in passing, but as an alternative ground for dismissal—that declaratory relief would be inappropriate under the *Kapiloff* factors. *Kapiloff*, 155 F.3d at 493–94. Parallel lawsuits simultaneously seeking to resolve questions of fact about whether, where, and when lead exposure caused damages to Preston would be deeply inefficient and risk substantial, "unnecessary entanglement" between the state and federal courts. *Id.* at 494 (citing "unnecessary entanglement" with the state court proceeding and inefficiency as a factors weighing against the exercise of jurisdiction over a declaratory judgment action); *see also Mitcheson*, 955 F.2d at 239 (noting that resolution of overlapping factual issues in a federal declaratory action could result in collateral estoppel in the pending state court proceeding); *Evanston Ins. Co. v. Dan Ryan Builders, Inc.*, Civ. No. ELH-11-02366, 2012 WL 502965, at *5–6 (D. Md. Feb. 13, 2012) (finding unnecessary entanglement in suit seeking declaration of the insurer's duty to indemnify and granting motion to dismiss); *Pa. Nat'l Ins. Co. v. Eastern Homes, Inc.*, 2007 WL 4179428, at *8 (D. Md. Nov. 19, 2017) (same).

7

DATED this 12 day of July, 2019.

BY THE COURT:

James K. Bredar  
Chief Judge